[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has brought an action for dissolution of marriage in the State of Connecticut against the defendant, now living in Maryland. The defendant has moved to dismiss the complaint with respect to support and alimony in the ground that this court lacks in personam jurisdiction over the defendant.
The parties were married on April 7, 1979 in New London, Connecticut. They had one child, Timothy A. Panganiban, born May 23, 1981. They lived in Connecticut until March of 1985 when the defendant moved out of the state. While living in Connecticut from April, 1979 until he left in March, 1985, the defendant frequently received public assistance for support. He and his wife filed joint tax returns as Connecticut residents, had bank accounts here and enrolled their child in Connecticut public schools. After the defendant left the state, the plaintiff again required public assistance for herself and their child. The plaintiff was in contact with members of defendant's family living in Connecticut and saw him here during his visits to them. She requested support in 1986, and in 1989 during his visits to Connecticut. He refused to offer assistance. She has tried to contact him since 1989 after his mother's funeral in Connecticut, which he attended, without success. In September, 1992, the defendant won $16,000,000 in the Delaware Powerball Lotto. He receives about $800,000 per year as payment.
The plaintiff brought this action in May, 1996. She seeks (1) a dissolution of the marriage; (2) sole custody of the minor child; (3) child support; (4) alimony; (5) an equitable distribution of the marital estate; (6) an allowance to prosecute; (7) an allocation of debts; and (8) an order that she be allowed to take the child as a tax exemption.
The defendant moves to dismiss the case regarding any financial orders against him on the grounds that the court lacks personal jurisdiction of the plaintiff. CT Page 6490
The plaintiff claims that under C.G.S. § 46b-46 (b), the state's long arm statute, the court does have personal jurisdiction over the defendant.
The sole issue presented to the court on the Motion to Dismiss is whether C.G.S. § 46b-46 (b) is unconstitutional. Both parties agree that the statutory requirements of actual notice, residency of the plaintiff meets the requirement of C.G.S. § 46b-44, and that this state was the domicile of both parties immediately prior to or at the time of their separation. C.G.S. § 46b-46 (b).
The defendant claims that the statute C.G.S. § 46b-46 (b) was amended to delete the third requirement of domicile as of Jan 1, 1996. The Public Act 95-31 was clearly passed to make it easier to collect support from out of state parties.
He then asserts that as a result, the statute requires no connection between the non-resident defendant and the State of Connecticut and thus renders C.G.S. § 46b-46 (b) unconstitutional. The defendant then cites several cases wherein he claims that where there is no contact between the state and the defendant there can be no in personam jurisdiction.
He then, goes on to state the essential criteria is whether the quality and nature of the defendant's activity are such that it is reasonable and fair to require him to conduct his defense in the forum state. The cases cited hold that the due process clause does not contemplate that a state may make an in personam judgment against an individual who has no contacts, ties or relations.
In so stating his position, the defendant ignores the second part of the statute C.G.S. § 46b-46 (b)(2) which requires the party requesting alimony and support to have been a resident of this state for at least twelve months prior to the filing of the complaint and that one of the parties was domiciled in this state at the time of the marriage or that the cause for the dissolution of the marriage arose after either party moved into this state. C.G.S. § 46b-44 (c).
Furthermore, applying the long arm statute to this case comports with the principles of due process. The defendant first claims a lack of minimum contacts. He claims he has no meaningful CT Page 6491 contacts with this forum. He claims he never invoked the benefits and protection of the laws of this state. He claims that there is no reason that he should reasonably anticipate being hauled into court in Connecticut. He claims that it is essential that there be some act by which the defendant "purposefully avails itself within the forum state, thus invoking the benefits and protection of its laws." He claims there can be no in personam jurisdiction of a non-resident unless the non-resident purposefully denies the benefits from activities relating to the state.
With respect to the minimum contact test, the cases cited by the defendant rely on entirely different factual situations. In this case, the parties were married in Connecticut and had a child here. The defendant and his wife and child all received financial support from this state.
The legislative history of Public Act 95-31, which amended General Statutes § 46b-46, eliminated the requirement that both parties be domiciled in the state immediately prior to or at the time of their separation from General statutes § 46b-46
(b). It became effective January 1, 1996.
On page 4634 of the hearings on the bill (SB10), Senator Lovegrove made the following comments:
"This bill is the bill we refer to as the deadbeat dad's bill or the deadbeat parents' bill.
Currently in the State of Connecticut there's one and a half billion dollars owed to parents who have custody of the children and support from the parent or guardian not in residence.
It's also sad to say that when it comes to paying your support to your children, the absent parent will pay support only 51% of the time, where that same absent parent will pay their used car loan 94% of the time. It's just, it's very difficult for me to imagine how an individual could find their used car payments more important than the payments that care for their children. It's sad but true and it happens here in Connecticut. . . ."
"Also, when you're deciding whether or not to vote on the bill, and consider the $1.5 billion that these deadbeat parents are behind in their support, consider the effect on the State of Connecticut on the Welfare budget in the State of Connecticut. CT Page 6492 That's where most of the welfare budget, particularly the AFDC budget comes from. Paying support for children where the absent parent refuses to contribute."
The court believes that this part of the statute was eliminated in the amendment to give the statute more teeth in the enforcement of support orders. The above quote from senator Lovegrove supports a minimum contacts analysis that discusses the defendant's contacts with Connecticut.
The defendant chose to leave the state, abandoning his family who continued to be supported by the taxpayers of this state. It is disingenuous of the defendant who has now become wealthy to claim it would "offend all notions of fair play and substantial justice" for this court to exercise personal jurisdiction over him.
The defendant purposefully availed himself of the benefits of this state by obtaining a marriage license here, enrolling his child in public school and most significantly relying on this state to support his wife and child after he left the forum.
Conclusion
The court finds that all of the criteria of C.G.S. §46b-46 (b) have been met. The court further finds that the facts in this case comport with the due process clause regarding minimum contacts.
The court does not find the statute 46b-46 (b) to be unconstitutional as applied to this case.
The Motion to Dismiss is hereby denied.
D. Michael Hurley Judge Trial Referee